IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TENAE SMITH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-03282-JKB |
| | ) | Chief Judge James K. Bredar |
| WESTMINSTER MANAGEMENT, LLC, | ) | |
| *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE
FOR THE LIMITED PURPOSE OF OPPOSING DEFENDANTS' MOTION FOR
LEAVE TO FILE SUPPLEMENTAL REMOVAL STATEMENT UNDER SEAL**

Non-party press organizations The Baltimore Sun, ProPublica, The Washington Post,

WMAR-TV (which is owned and operated by Scripps Media, Inc.), and the Associated Press

(collectively, the "Media Intervenors") respectfully submit this Memorandum of Law in support

of their motion pursuant to Fed. R. Civ. P. 24 and L.R. 105.11 to intervene for the limited

purpose of opposing Defendants' motion for leave to file their Supplemental Removal Statement

under seal. *See* ECF No. 21.

**PRELIMINARY STATEMENT**

This case involves issues of significant and legitimate public interest – a potential class

action on behalf of all tenants living in 17 apartment complexes in Maryland alleging claims

against companies owned in part by Jared Kushner, son-in-law and advisor to President

Donald J. Trump.  Yet paradoxically, the Defendants ask this Court to find that the public

implications of this dispute justify withholding from all members of the public access to certain

court records.  Under well settled law, however, the public and press have presumptive rights of

to access judicial documents.  Under the common law, there is a presumption of access accorded

to all judicial records, which can only be rebutted if countervailing interests heavily outweigh the

public interests in access.  *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.

1988).  Under the First Amendment there is a right of access to certain judicial records, which

may be sealed only with evidence of a compelling government interest and the denial of access

must be narrowly tailored to serve that interest.  *Id.* (citing *Press-Enterprise Co. v. Superior*

*Court*, 464 U.S. 501, 510 (1984); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 607

(1982); *In re Washington Post Co.*, 807 F.2d 383, 390 (4th Cir. 1986)).  Defendants fail to meet

either standard and their sealing request should be denied.

 *First*, Defendants have not presented any concrete facts or evidence justifying their

request to file their Supplemental Removal Statement under seal.  Instead, they make assertions

about generalized reputational harms their "private investors" will suffer should the

Supplemental Removal Statement be filed on the public record, *see* Mot. 6, but these are not

recognized privacy grounds for sealing court records.

 *Second*, neither the facts nor evidence supports Defendants' assertion that filing their

Supplemental Removal Statement unsealed would interfere with their ability to get a fair trial.

Even in cases with widespread publicity (much more than this case), courts have rejected claims

that a "fair" jury cannot be found.  *E.g.*, *CBS v. District Court*, 729 F.2d 1174, 1179-82 (9th Cir.

1983) ("highly publicized cases," including Charles Manson and Watergate trials, "indicate that

even when exposed to heavy and widespread publicity many, if not most, potential jurors are

untainted by press coverage").  Moreover, this lawsuit is likely to receive media coverage

whether or not Defendants' forthcoming Supplemental Removal Statement is publicly available.

 *Third*, Defendants have no basis for complaining about the potential for "excessive

media coverage."  Defendants do not (and cannot) identify any specific, cognizable risk of harm

that would result from disclosing their Supplemental Removal Statement on the public docket.

No prejudice can be shown by allowing the public to have access to more accurate information, nor can public access be limited by speculation about how the news media might present court records.  *E.g.*, *In re Charlotte Observer*, 882 F.2d 850, 855 (4th Cir. 1989); *In re McClatchy Newspapers*, 288 F.3d 369, 373-74 (9th Cir. 2001).  To the contrary, much of the showing Defendants make merely reinforces that there is significant public interest in this matter that militates against limiting public scrutiny of these proceedings.

For all these reasons, Media Intervenors respectfully request that Defendants' motion be denied, and that the Court permit the public filing and dissemination of Defendants' Supplemental Removal Statement.

## INTEREST OF MEDIA INTERVENORS

The Baltimore Sun is a daily newspaper based in Baltimore, providing coverage of local, state, and national and international news, including proceedings in Maryland's state and federal courts.  ProPublica is a Pulitzer Prize-winning non-profit news organization based in New York City that produces investigative journalism in the public interest.  The Washington Post is a daily newspaper, published in Washington, D.C., covering international, national, and regional news. WMAR-TV is a Baltimore-based television station, owned and operated by Scripps Media, Inc., covering local and regional news.  The Associated Press is an American multinational not-for-profit news agency headquartered in New York City that is owned by its contributing newspapers and radio and television stations in the United States, all of which contribute stories to the AP and use material written by its staff journalists.  All of these news organizations have reported stories related to the Baltimore-area apartment complexes in which Mr. Kushner holds a stake.

**ARGUMENT**

**A.      The Press Has A Right To Intervene To Seek Disclosure Of Court Documents**

The right of journalists and news organizations to intervene for the limited purpose of seeking access to court records and proceedings is well established.  Indeed, contrary to Defendants' general and unfounded denial, ECF No. 27 ¶ 3, the press has standing to assert a right of access to court records and proceedings.  *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609 n.25 (1982) ("representatives of the press and general public must be given an opportunity to be heard on the question of their exclusion" from court proceedings) (citation and internal quotation omitted).  To that end, the Fourth Circuit has held that nonparties, like the Media Intervenors, should be permitted to intervene for the purpose of challenging limitations on the right of access.  *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180-81 (4th Cir.1988) (addressing district court's failure to follow Fourth Circuit sealing procedures on intervenor Baltimore Sun's motion for access to sealed court records); *Rushford*, 846 F.2d at 250-54 (addressing district court's procedural failure in the context of intervenor Washington Post's motion to unseal documents); *see also Rosenfeld v. Montgomery Cty. Pub. Sch.*, 25 F. App'x 123, 131 (4th Cir. 2001) (affirming third-party press intervenors' standing to intervene on appeal to seek review of sealing orders of the district court).  Local Rule 105.11 gives effect to this right by permitting "interested parties," like the Media Intervenors, to interpose objections to motions seeking to seal court records.  L.R. 105.11.  Thus, Media Intervenors respectfully request that their motion to intervene be granted.

**B.     The Press and Public Have a Common Law Right to Access the Supplemental Removal Statement**

    1.     The Common Law Provides a Strong Presumption of Access to Records Filed in Judicial Proceedings

As the Supreme Court has recognized, public access to judicial proceedings "enhances the quality and safeguards the integrity of the factfinding process," "fosters an appearance of fairness," and heightens "public respect for the judicial process," while permitting "the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper*, 457 U.S. at 606. In accordance with these principles, the Supreme Court and Fourth Circuit have long recognized that the public and press have a presumptive right to access documents that are filed in judicial proceedings. "The right of public access to documents or materials filed in a district court derives from two independent sources: the common law and the First Amendment." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004). Here, however, it is unnecessary to reach the question of whether First Amendment access rights attach to the Supplemental Removal Statement, because Defendants' motion to seal may be denied on the basis of the common law right alone. Indeed, under either standard, "[t]he public's right of access to judicial records and documents may be abrogated only in unusual circumstances." *Stone*, 855 F.2d at 182.

"The common law presumes a right of the public to inspect and copy 'all judicial records and documents,'" *Va. Dep't of State Police*, 386 F.3d. at 575 (quoting *Stone*, 855 F.2d at 180). "For a right of access to a document to exist under either the First Amendment or the common law, the document must be a 'judicial record'" in the first instance. *In re Application of United States for an Order Pursuant to 18 U.S.C. § 2703(D)*, 707 F.3d 283, 290 (4th Cir. 2013). The Fourth Circuit has broadly held that judicially authored or created documents are "judicial records," as are documents filed with the court that "play a role in the adjudicative process, or

adjudicate substantive rights." *Id.* (citing *Rushford*, 846 F.2d at 252; *In re Policy Mgmt. Sys. Corp.*, 67 F.3d 296 (4th Cir. 1995) (unpublished table decision)). Defendants' Supplemental Removal Statement is indisputably a document filed with the court that will "play a role in the adjudicative process."

The common law right begins with a presumption that the public should have the right to access any judicial document, so "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption." *Rushford*, 846 F.2d at 253. The presumption of access may only be "rebutted if countervailing interests heavily outweigh the public interests in access,'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Rushford*, 846 F.2d at 253)); *see also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-99 (1978). Performing this balancing analysis is 'best left to the sound discretion of the [district] court.'" *Id.* (quoting *Nixon* at 598-99).

Most of the case law Defendants rely upon in their motion to seal concern the standards for adopting protective orders for materials that are exchanged only between parties in discovery, before any of the same materials are actually used in litigation as judicial records attached to court filings or introduced as evidence at trial. *See* Mot. 4 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (standard for Rule 26 protective order); *A Helping Hand, LLC v. Baltimore Cty.*, 295 F. Supp. 2d 585, 592 (D. Md. 2003) (same); *UAI Tech., Inc. v. Valutech, Inc.*, 122 F.R.D. 188, 191 (M.D.N.C. 1988) (same)). As the Fourth Circuit has held, *Seattle Times* and its progeny are wholly inapposite to the issue of public access to judicial records, because "such discovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court." *Rushford*, 846 F.2d at 252. For example, where appropriate, a document exchanged in discovery may be subject to a

protective order, but once it is filed as an exhibit to a summary judgment motion, it becomes

subject to a First Amendment right of access.  *Id.*[1]

> 2.    The Defendants Offer No Significant, Countervailing Interests That
>        Heavily Outweigh the Common Law Presumption of Access

Applying the common law right, several cases have expressly rejected similar motions to

seal the identities of members and member entities of limited liability companies for purposes of

establishing diversity jurisdiction.[2]  In *3376 Lake Shore, LLC v. Lamb's Yacht Center, Inc.*, the

court rejected the plaintiff's request to file under seal "a one-page document that lists the

identities of its member and the members of each derivative entity," because the plaintiff "who

chose to initiate its suit in federal court in reliance on diversity jurisdiction, had to have been

aware that it would be required to prove diversity by alleging the identity and citizenship of its

members and the members of the derivative entities."  No. 3:14-CV-632-J-34PDB, 2014 WL

12621574, at *1-2 (M.D. Fla. Aug. 25, 2014).  Here too, the Defendants elected to remove this

case to federal court, knowing that they would be required to establish diversity jurisdiction.

The court in *3376 Lake Shore, LLC* also found the plaintiff failed to "articulate[] a

legitimate privacy interest in the members' identities," concluding that "its preference that the

identities remain private is not a valid reason to overcome the presumption of public access."  *Id.*

---

[1] Defendants' reliance on *Conservation Council of North Carolina v. Costanzo*, 505 F.2d 498, 502 (4th Cir. 1974), and *First Citizens Bank & Trust Co. v. Camp*, 432 F.2d 481 (4th Cir. 1970), which both address the standard for obtaining a preliminary injunction, are similarly irrelevant.  *See* Mot. 3-4.

[2] Defendants assert that courts routinely seal documents similar to their Supplemental Removal Statement, ECF No. 27 ¶ 5 n.1, but as Plaintiffs point out, nearly every such case involved unopposed motions to seal.  ECF No. 28 at 4 n.2.  In light of Plaintiffs' opposition to Defendants sealing request, and the objections asserted *inter alia* by the Media Intervenors, such uncontested cases are not persuasive here.  *See Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, No. CIV.A. DKC 13-0031, 2013 WL 3465352, at *10 n.4 (D. Md. July 9, 2013); *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 122 (D. Md. 2009) (where motion to seal was "vigorously contested," distinguishing cases involving uncontested motions as factually inapposite).

The court also explicitly rejected the same arguments Defendants make here, that the identities of their members should be sealed because they are allegedly "not central to the merits of the case," explaining:

> Although case law recognizes that a significant amount of information generated in federal litigation has "'little or no bearing on the exercise of Article III judicial power,'" [*F.T.C. v.*] *AbbVie Prods. LLC*, 713 F.3d [54,] 62 [(11th Cir. 2013)], allegations establishing jurisdiction do not fall into this category. "The common-law right of access to federal courts is designed to promote public understanding of ... what a court does and how a court goes about adjudicating cases," *id.* at 72, and the Court may not reach the merits of the case without first establishing jurisdiction, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"). Therefore, the public interest in understanding the basis for the court's jurisdiction—in this case, the identity and citizenship of the members—outweighs the plaintiff's interest in keeping that information confidential. The plaintiff must provide sufficient justification to overcome the presumption of judicial access, and it has failed to do so.

*Id.*

Another court reached a similar conclusion in *Signicast, LLC v. Fireman's Fund Ins. Co.*, 920 F. Supp. 2d 967, 970 (E.D. Wis. 2013), denying the request of a plaintiff seeking to remand for lack of diversity jurisdiction to seal documents that would reveal their LLC's "ownership structure and the individuals and entities who compose it," where the only proffered ground for doing so was that "the various individuals and entities would prefer to not have their identities disclosed." The court rejected that rationale, finding it was "not a valid reason for removing documents that influence or underpin a judicial decision from the public record in civil litigation." *Id.* (citing *Baxter Int'l Inc. v. Abbott Labs.*, 297 F.3d 544, 545-47 (7th Cir. 2002)).

The Defendants here essentially make the same arguments that were rejected in both *3376 Lake Shore* and *Signicast*.  And more broadly, their arguments fail to show some "significant interest" that could outweigh the presumption of disclosure.   Defendants assert that their Supplemental Removal Statement must be sealed to protect the privacy interests of "innocent private investors."  Mot. 6.  But, the Fourth Circuit does not recognize a compelling interest in the "privacy" of financial investors.  *Cf. Allstate Ins. Co. v. Warns*, No. CIV. CCB-11-1846, 2013 WL 6036694, at *9 (D. Md. Nov. 12, 2013) (sealing "sensitive financial information—in particular, personal checks and bank statements—that need not be made publicly available").

Courts that have identified legally cognizable privacy interests have done so with more specificity than a blanket statement that one has a right to be free from media coverage.  *See, e.g.*, *United States v. Hubbard*, 650 F.2d 293, 323-24 (D.C. Cir. 1980) (intimate details of individual lives, sexual or otherwise, is an assertable privacy interest); *In re Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990) (common law right of access may be qualified by the privacy rights of persons whose "intimate relations may thereby be disclosed"); *Rock v. McHugh*, 819 F. Supp. 2d 456, 475-76 (D. Md. 2011) ("sensitive medical or personal identification information may be sealed," but not where "the scope of [the] request is too broad"); *Briggs v. Marriott Int'l, Inc.*, 368 F. Supp. 2d 461, 463 n. 1 (D. Md. 2005) (sealing sensitive medical records), *aff'd*, 205 F. App'x 183 (4th Cir. 2006).  But "[t]he mere fact that records may be controversial, personal, or embarrassing does not alone justify sealing those records from public inspection."  *Braude v. Vilnyanskaya*, No. ELH-17-364, 2017 WL 2131855, at *3 (D. Md. May 17, 2017) (citing *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's

embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.")).

Defendants' motion fails to provide any factual details regarding the purported harms that their "private investors" will suffer, nor is it clear how their mere identities are truly "confidential" or "sensitive."  Rather, at bottom, Defendants appear to be arguing "that it does not want the information it uses in defense of this case to be public, as it feels it would be detrimental to its financial interests in the business community," *Minter*, 258 F.R.D. at 124, and the reputational interests of its individual investors.  Such an "urge for secrecy is incompatible with the public resolution of business disputes in our open judicial system." *Id.* (denying contested motion to seal where moving party referenced only "vague topics" of business information contained in materials it sought to seal but did not make specific factual representations about competitive disadvantage it would face by making them publicly available).  Thus, Defendants' generalized and unfounded claims that their "private investors" will be subject to unflattering media coverage, and any concern that they might be embarrassed by their association with Defendants, does not constitute the privacy interests identified as "compelling" for purposes of sealing otherwise public court documents.

Defendants similarly offer no specific facts, or any evidence, in support of their assertion that "adverse publicity" that may result from disclosure of the Supplemental Removal Statement would "endanger" their ability to "receive a fair trial," Mot. 7 – nor do they explain how the accurate identification of Defendants' ownership structure could conceivably prejudice them. Courts routinely have rejected similar arguments about "tainted" jury pools, finding that even extensive publicity does not prevent a party from getting a fair trial.  As the Supreme Court has explained, traditional protections such as *voir dire* allow a court to "identify those jurors whose

prior knowledge of the case would disable them from rendering an impartial verdict." *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 15 (1986).  Thus, the "First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant of" the right to a fair trial.  *Id.  See also In re Charlotte Observer*, 882 F.2d at 855 ("[W]e think it gives much too short shrift to the capability of jury *voir dire* to guard against the potential prejudice of pretrial publicity."); *Seattle Times Co. v. District Court*, 845 F.2d 1513, 1517 (9th Cir. 1988) ("pervasive publicity, without more, does not automatically result in an unfair trial"; rejecting sealing); *Associated Press v. District Court*, 705 F.2d 1143, 1146 (9th Cir. 1983) ("In a large metropolitan area … with its millions of potential jurors, it is unlikely that [*voir dire* and admonitions] will fail to produce an unbiased jury" despite pretrial publicity); *In re NBC, Inc.*, 635 F.2d 945, 953-54 (2d Cir. 1980) ("The opportunity for voir dire examination still remains a sufficient device to eliminate from jury service those so affected by exposure to pre-trial publicity that they cannot fairly decide issues of guilt or innocence.…  We do not believe the public at large must be sanitized as if they all would become jurors ….").  Moreover, their demonstration of the public interest in this case proves too much, because it makes clear that this case will likely draw public attention whether or not the Supplemental Removal Statement is filed under seal.  Defendants offer no argument as to how disclosure of the Supplemental Removal Statement could somehow make the difference in whether they receive a fair trial.

Furthermore, Defendants' vague concerns about allegedly "sensational" media coverage do not justify limiting public access.  *See* Mot. 6.  Courts routinely reject such vague claims because, where the presumptive right of access applies, a party's concerns about how the press might report on an issue, or how the public might perceive it, are not compelling reasons that can justify sealing.  *See McClatchy Newspapers*, 288 F.3d at 373-74 (argument that court records

containing false accusation would be reported by the press without proper context did not support sealing); *United States v. Schlette*, 842 F.2d 1574, 1583 (9th Cir.) (granting newspaper's request to unseal court record over objection that the press' interest was "nothing more than a vehicle for satisfying public curiosity"), *amended*, 854 F.2d 359 (9th Cir. 1988).  Here too, the public interest in this case militates ***against*** sealing records, not the other way around, since the purpose of the presumption is to permit the public to "monitor[] the functioning of the courts [and] the integrity of the judiciary."  *Doe v. Pub. Citizen*, 749 F.3d 246, 266 (4th Cir. 2014).

In sum, Defendants' conclusory assertions do not satisfy their burden of establishing a significant countervailing interest that outweighs the public's common law right of access to the Supplemental Removal Statement.

### C.    Public Access to Defendants' Supplemental Removal Statement Is Also Protected By the First Amendment

In addition to the public's common law right of access, the First Amendment provides a "more rigorous" right of access for certain judicial records and documents.  *Va. Dep't of State Police*, 386 F.3d at 576; *see also In re Application of United States for an Order*, 707 F.3d at 290.  Where the First Amendment does apply, access may be denied "only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest."  *Stone*, 855 F.2d at 180; *see also In re Wash. Post Co.*, 807 F.2d at 390 (citing *Press-Enter. Co. v. Superior Court*, 464 U.S. at 510).  "The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present specific reasons in support of its position."  *Va. Dep't of State Police*, 386 F.3d at 575 (citing *Press-Enter. Co. v. Superior Court*, 478 U.S. at 15).

The First Amendment secures a right of access "only to particular judicial records and documents."  *Stone*, 855 F.2d at 180.  The Fourth Circuit has noted that civil proceedings are

"traditionally open" and that "in some civil cases the public interest in access ... may be as strong as, or stronger than, in most criminal cases." *Va. Dep't of State Police*, 386 F.3d at 580 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15 (1979)).[3]  Defendants' Supplemental Removal Statement is encompassed by the First Amendment right of access, as it will essentially determine whether the Defendants may properly litigate in this case at all.  Moreover, as the court in *3376 Lake Shore, LLC* found, it functions, post-removal, in the same manner as any initial pleading, such as a complaint, which must identify the parties to the case in a manner sufficient to justify a court's jurisdiction.  Courts have long recognized that complaints trigger First Amendment access rights.  *See M.P. v. Schwartz*, 853 F. Supp. 164, 167 (D. Md. 1994). Moreover, sealing or redacting identities in complaints is typically only permitted for compelling reasons such as protecting minors who are alleged to be victims of child abuse and neglect.  *Id.* at 167-69.  The interests that Defendants assert here do not remotely rise to that level.

The fundamentally open nature of judicial proceedings "is no quirk of history; rather, it has long been recognized as an indispensable attribute of an Anglo-American trial." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 585, 569 (1980).  Accordingly, for the foregoing reasons, The Baltimore Sun, ProPublica, The Washington Post, WMAR-TV (which is owned and operated by Scripps Media, Inc.), and the Associated Press seek leave to intervene in this proceeding and object to Defendants' request to seal their to-be-filed Supplemental Removal Statement from the public record.

---

[3] The Fourth Circuit has extended the application of the First Amendment test to "dispositive" civil motions, such as a motion for summary judgment that is successful either in full or in part.  *Rushford*, 846 F.2d at 252; *Va. Dep't of State Police*, 386 F.3d at 576.

Dated: December 8, 2017

Respectfully submitted,


_____/s/ Lisa B. Zycherman_____
Nathan Siegel (D. Md. Bar No. 11169)
nathansiegel@dwt.com
Lisa B. Zycherman (D. Md. Bar No. 16969)
lisazycherman@dwt.com
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Avenue, NW, Suite 800
Washington, DC  20006
Ph:  202-973-4357; Fax:  202-973-4499

*Counsel for Intervenors The Baltimore Sun,
ProPublica, The Washington Post, WMAR-TV,
and the Associated Press*