# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **TENAE SMITH,** *et al.*, | * | |
| Plaintiffs | * | |
| v. | * | CIVIL NO. JKB-17-3282 |
| **WESTMINSTER MANAGEMENT, LLC,** *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Plaintiffs Tenae Smith and Howard Smith (no relation) filed this lawsuit on their own behalf and on behalf of all others similarly situated against Westminster Management, LLC, JK2 Westminster, LLC (now dissolved), Carroll Park Holdings, LLC, and Dutch Village, LLC (collectively, "Defendants"), in the Circuit Court for Baltimore City on September 27, 2017. (*See* Compl., ECF No. 2; Notice of Removal, ECF No. 1.) On November 7, 2017, Defendant Dutch Village, LLC, removed the case to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and filed a Removal Statement on the same day. (*See* Notice of Removal; Removal Statement, ECF No. 6.) The other Defendants consented to removal. (*See* ECF No. 5.) Two Defendants have not fully disclosed the citizenship of their members, and all Defendants moved the Court for leave to file a supplemental removal statement under seal ("Defendants' Motion") (Defs.' Mot., ECF No. 21). Plaintiffs responded in opposition (ECF No. 28) and the Court granted The Baltimore Sun's, ProPublica's, The Washington Post's, WMAR-TV's, and

the Associated Press's (collectively, the "Media Intervenors") motion to intervene to oppose Defendants' Motion (ECF No. 31). (*See* ECF No. 43 (granting Media Intervenors' motion to intervene).) The Court has construed the Media Intervenors' motion to intervene as both a motion to intervene and a substantive motion in opposition to Defendants' Motion. Defendants have responded to the Media Intervenors' motion (ECF No. 40) and replied to Plaintiffs' opposition (ECF No. 39), and Media Intervenors have replied to Defendants' opposition (ECF No. 41). The Defendants' Motion is therefore fully briefed, and as the Court has waited more than fourteen days since the filing of the motion in accordance with Local Rule 105.11, the Defendants' Motion and the Media Intervenors' motion in opposition are ripe for review. No hearing is necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). Defendants have failed to present sufficient countervailing interests to overcome the common law presumption of public access to judicial records. Accordingly, the Defendants' Motion will be denied and the Media Intervenors' motion will be granted.

I.  *Background*

Plaintiffs' allegations are only tangentially relevant to the immediate issue before the Court – whether to permit the Defendants to file a supplemental removal statement under seal. Therefore, the Court will only briefly discuss the substance of Plaintiffs' complaint. Essentially, Plaintiffs allege that they are members of a class of similarly situated persons who are tenants of Defendants' various properties. (*See* Compl.) Plaintiffs allege that Defendants engaged in various practices to wring fees from these tenants, including baselessly threatening eviction, charging various late fees and legal fees, and misallocating rent payments to pay for these fees, causing the tenants to come up short on their rent. (*See, e.g.*, *Id.* ¶¶ 28-34.) According to the Plaintiffs, these practices violate Maryland state laws. (*See id.* ¶¶ 73-123.)

Plaintiffs filed this action in state court and Defendant Dutch Village, LLC, removed the case to this Court. All Defendants consented to the removal. In addition to asserting the basis for jurisdiction in a removal statement, all parties that file cases in this Court, "including the removal of a state action," must disclose "[t]he identity of all members of any party that is a business entity established under state law, other than a corporation; and in cases based on diversity jurisdiction, the state of citizenship of each member." Local Rule 103.3(a) (D. Md. 2016). Similarly, under the Standing Order Concerning Removal (entered by the Court on November 7, 2017, in this case) the Defendants must set forth "the citizenship of all members." (Standing Order Concerning Removal ¶ 2, ECF No. 8.) For purposes of establishing diversity jurisdiction, the citizenship of an LLC is the citizenship of each member of the LLC. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990); *General Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004). Defendants Dutch Village, LLC, and Carroll Park Holdings, LLC, did not fully disclose, in either the Removal Statement or in their respective Local Rule 103.3 disclosures, the membership of their members that are themselves LLCs, and therefore they did not disclose all of the information necessary for the Court to determine jurisdiction. Both Dutch Village and Carroll Park Holdings did state the citizenship of their members in the Defendants' Response to the Court's Standing Order Concerning Removal. (*See* ECF No. 11.) Neither LLC, however, has provided the Court with the identities (or citizenship) of their members' members' members. This phrasing is awkward, but it is necessary to convey the point that an LLC can never be the "end of the line" for these purposes. *To measure jurisdiction, the Court must know the identity and citizenship of the non-LLC members residing at the end of any string of LLCs*. Westminster Management, LLC, and JK2 Westminster, LLC,

have (or, in the case of JK2 Westminster, LLC, had) only human and corporate members and therefore additional layers of disclosure are not necessary.

Defendants, including Westminster Management LLC and JK2 Westminster LLC (now dissolved), whose members include (or included) Jared Kushner, son-in-law of President Donald Trump, as well as other members of the Kushner family, did not wish to publicly disclose the identities and location of every member of every LLC involved in this action. As a result, after Dutch Village and Carroll Park Holdings failed to fully disclose, Defendants moved to file a "supplemental removal statement" under seal. (ECF No. 21.)

When determining whether materials should be sealed, the Court must follow a certain procedure. It must

> (1) give the public adequate notice that the sealing of documents may be ordered; (2) provide interested persons an opportunity to object to the requests before the Court makes its decision; (3) if the Court decides to seal documents, it must state its reasons on the record, supported by specific findings; and (4) state its reasons for rejecting less restrictive alternatives.

*Under Armour, Inc. v. Body Armor Nutrition, LLC*, JKB-12-1283, 2013 WL 5923757, at *1 (D. Md. Nov. 1, 2013) (citing *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)). In accordance with Local Rule 105.11, the Court has waited more than fourteen days after the filing of Defendants' Motion to rule on it, giving the public adequate notice, and it has granted interested persons, i.e. the Media Intervenors, an opportunity to intervene. (*See* ECF No. 44.) As noted above, the Court sees the Media Intervenors' motion to intervene as a substantive motion in opposition to Defendants' Motion as well. Defendants have responded to that motion and Media Intervenors have replied. Defendants have also replied to Plaintiffs' opposition. The Defendants' Motion and the Media Intervenors' motion in opposition are therefore ripe for review.

4

## II. *Analysis*

The public has a right, albeit not an absolute one, to access certain materials filed in a federal court. *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 180 (4th Cir. 1988). That right has two sources – the common law and the First Amendment to the United States Constitution. *Virginia Dep't of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004). The difference "between the rights of access afforded by the common law and the First Amendment is significant." *Id.* (internal quotation marks omitted). The common law right of access attaches to all "judicial records" and can only be overcome by "countervailing interests [that] heavily outweigh the public interests in access"; that determination is a matter of discretion under the Court's supervisory powers. *Rushford*, 846 F.2d at 253; *see Washington Post*, 386 F.3d at 575. The First Amendment right of access only attaches to certain judicial records and can only be overcome if there is a compelling government interest to restrict access and "only if the denial is narrowly tailored to serve that interest." *Washington Post*, 386 F.3d at 576 (quoting *Stone*, 855 F.2d at 180).

The Court will first discuss why the document at issue – a removal statement that provides the Court with sufficient information to determine the citizenship of the Defendants – is a "judicial record" to which the common law right of access attaches. Then, it will discuss why the countervailing interests presented by the Defendants do not outweigh the public's interest in access. Because the Court finds that the motion to seal is denied on the ground that a common law right attaches to the document, and that the right is not outweighed by Defendants' interests, there is no need for the Court to address whether the document is additionally protected by the First Amendment. *See Application of Newsday, Inc.*, 895 F.2d 74, 78 (2d Cir. 1990) ("[W]e first

look to the common law, for we need not, and should not, reach the First Amendment issue if judgment can be rendered on some other basis.").

The Court begins its analysis by determining whether the public has a right to access this document at all. The public only has a right to access "judicial records," and the document at issue pushes the boundary for what constitutes such a record. The Fourth Circuit recently articulated a standard for making that determination: "[D]ocuments filed with the court are 'judicial records' if they play a role in the adjudicative process, or adjudicate substantive rights." *In re Application of the United States of America for an Order Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290 (4th Cir. 2013) ("*In re Application*"). Such a definition could encompass virtually all papers in the orbit of litigation – from an email between opposing counsel scheduling a conference call to the final verdict form – as virtually all such papers play *some* "role in the adjudicative process." But the definition of "judicial record" is more limited. Documents obtained through pre-trial discovery but not attached to a motion or used in trial are generally not "judicial records." *See Rushford*, 846 F.2d at 252. Neither are confidential settlement agreements between parties. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 780 (3d Cir. 1994). These cases illustrate an implicit outer boundary to the *In re Application* definition: the "adjudicative process" refers to the decisionmaking process of the decisionmaker – either judge or jury. Discovery, for example, certainly plays a role in the *parties'* decisionmaking process, but until it is attached to a motion, or exhibited in a trial, it is not part of a judicial decisionmaker's process, and thus not a "judicial record."

This outer boundary comes into clearer view when one considers the purpose of the public's common law right to access documents. The underpinning of the public's right to access judicial records is the public's right to "judge the product of the courts in a given case."

6

*Columbus-America Discovery Grp. v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303 (4th Cir. 2000). That is, the right to access enables the public to judge the judges. *See In re Agent Orange Product Liability Litigation*, 98 F.R.D. 539, 543 (E.D.N.Y. 1983) (quoting *United States v. Mitchell*, 551 F.2d 1252, 1257-58 (D.C. Cir. 1976) ("The right of inspection is fundamental to a democratic form of government, serving as a check on possible abuses by the court system, and helping to produce an 'informed and enlightened public opinion'. [sic]")). "Public access serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *Doe v. Public Citizen*, 749 F.3d 246, 266 (4th Cir. 2014) (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)). The public's prerogative in judging the products of the court system naturally encompasses the right to view materials considered by the Court, but does not necessitate access to materials considered only by the parties, even if, broadly speaking, they are part of the "adjudicative process."

A removal statement falls within this outer boundary of the definition set forth in *In re Application* – it is a document that will play a role in the decisionmaking process of the Court. To rebut this conclusion, Defendants appeal to semantics: a removal statement may play a role in the decisionmaking process of the Court, but that process is not "adjudicative." Jurisdiction, as Defendants correctly note, allows a court to "bring a person ***into* its adjudicative process**," and the determination of jurisdiction is therefore necessarily not "adjudicative," but rather, it would seem, pre-adjudicative. (Defs.' Reply to Pls.' Opp'n 3, ECF No. 39 (emphasis in the original) (quoting Black's Law Dictionary (9th ed. 2009).) Strictly speaking, adjudication is the "legal process of resolving a dispute; the process of judicially deciding a case." *Adjudication*, Black's Law Dictionary (10th ed. 2014). If neither party challenges subject matter jurisdiction

then, even though the Court will always be mindful of its jurisdiction, a determination that jurisdiction is proper would not "resolv[e] a dispute." And such a preliminary determination clearly would not "decid[e] a case." This exegesis of the term "adjudicative process" is certainly clever, but the Defendants' reading of *In re Application*, and thus the term "judicial record" itself, is too narrow and ignores the impetus behind the public's right of access.

The public's interest in the efficacy of a court's decisions does not extend only to a court's decisions "on the merits." A court may rule on a motion to dismiss on the ground that the statute of limitations has lapsed, that venue is improper, or that the plaintiff has failed to prosecute. In each of these instances, the public would still have a valid interest in whether the court had ruled correctly, even though the court may barely touch upon the factual allegations in the complaint. Whether explicitly or implicitly, the Court in this case will reach a determination as to whether it has jurisdiction. And, at the risk of being pedantic, a determination of jurisdiction *is* a determination. This determination will be a conclusion of the Court, based on applicable law and facts; one that impacts the rights and duties of parties and contributes, however slightly, to the precedent that another court may rely upon in the future. Given this reality, the Court can see no reason why the public's interest in judging the decisions made by this, or any, Court, would not extend to its decision whether jurisdiction is proper. Thus, the Court finds that a removal statement is a "judicial record" to which the public has a right of access.

That right, however, is not absolute. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The common law right to access can be overcome by "countervailing interests [that] heavily outweigh the public interests in access." *Rushford*, 846 F.2d at 253. "The party seeking to overcome the presumption bears the burden of showing some significant interest that

8

outweighs the presumption." *Id*. The "'presumption' in such cases favors public access," *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000) (quoting *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984)), but the decision to seal is still "best left to the sound discretion of the [district] court [considering] the relevant facts and circumstances of the particular case." *Washington Post*, 386 F.3d at 575 (first alteration in the original) (quoting *Nixon*, 435 U.S. at 598-99).

The countervailing interests asserted by a party seeking to overcome the public's presumption of access must be specific and non-conclusory. *See Waterkeeper Alliance, Inc. v. Alan & Kristin Hudson Farm*, 278 F.R.D. 136, 142 (D. Md. 2011); *Under Armour*, 2013 WL 5923757, at *2 ("The parties must provide specific factual representations to justify their arguments." (internal quotation marks omitted)). When, for example, a party moves to seal documents because they contain trade secrets, they must "explicitly identify information akin to trade secrets, and describe how its release will result in an unfair commercial disadvantage." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 123 (D. Md. 2009). A party cannot simply assert a fear of embarrassment or potential harm without detailing how specific disclosures will result in specific injuries.[1]

*Waterkeeper Alliance* is instructive. In that case, the plaintiff sued two defendants alleging violations of the Clean Water Act and the parties initially entered into an agreement allowing the parties to designate documents as confidential. 278 F.R.D. at 138. The plaintiff later sought to remove defendants' confidentiality designations for certain documents. *Id.* at 137.

---

[1] It is worth noting the difference between a protective order and the sealing of a document. Defendants correctly note that protecting a party from "embarrassment" is a valid consideration of the Court when determining whether to issue a protective order under Federal Rule of Civil Procedure 26(c). (*See* Defs.' Mot. Mem. Supp. 4, ECF No. 21-1.) A protective order "provides for the protection of confidential discovery material." *Waterkeeper Alliance*, 278 F.R.D. at 140 (internal quotation marks omitted). Once the discovery is attached to a motion or used in trial, continued privacy may require a sealing of the record. "[T]he significance of the documents' confidentiality designation [at this stage] necessarily changes," and keeping the document confidential (i.e. sealed) requires a greater showing by the party seeking to keep the document private. *Id.* (citing *Washington Post*, 386 F.3d at 576).

Ultimately, the defendants "each fail[ed] to establish, with the required level of specificity, that disclosure of the documents challenged in Plaintiff's motion will result in substantial harm." *Id.* at 142. For example, defendant Perdue Farms, Inc. wanted to keep private the names of Perdue employees, arguing that the employees could be poached by competitors. *Id.* at 143. "While the Court [did] not doubt Perdue's good faith belief that such poaching [was] possible, Perdue . . . failed to provide any specific demonstrations of fact, or concrete examples that establish that, for example, Perdue ha[d] been the victim of such poaching in the past or that competitors in Perdue's field actively poach[ed] employees from other businesses." *Id.* (internal quotation marks omitted). Similarly, Perdue asserted that other documents would be used by competitors and harm its business, but "provide[d] no additional details beyond vague . . . superlatives used to demonstrate the nature of that [harm]." *Id.*

The Defendants here assert that the following countervailing interests weigh against public access: that disclosure of the Defendants' members will deprive the Defendants of their "right to an impartial decision" by, essentially, unduly influencing the public,[2] and it will invade the privacy of the "remote disinterested investors/families." (Defs.' Mot. Mem. Supp. 2, ECF No. 21-1.) The Defendants believe that because the Kushners, including the President of the United States' son-in-law Jared Kushner, are members of Defendant LLCs, "the media has taken an unprecedented interest in this case" and made "outrageous allegations, and assign[ed] guilt."

---

[2] The Defendants suggest that disclosure of this information to the media, and the subsequent (further) sensationalizing of the case that Defendants believe is inevitable will "deprive the Defendants of their right to an impartial decision *by this Court*." (Defs.' Mot. Mem. Supp. at 2 (emphasis added).) The Court interprets this and similar averments as an argument that a potential jury will be unduly influenced by the media coverage. This Court will consider the information contained in the supplemental removal statement regardless of whether it was open to the public, as it is the job of this Court to determine subject matter jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Furthermore, this Court does not make decisions based on the treatment of a case in the media. Finally, before and during any jury trial in the future, the Defendants are free to request procedures and jury instructions that will ameliorate any such undue influence. When circumstances call for them, the giving of such instructions is a regular and ordinary practice in this Court.

(*Id*. at 1.) Publicly releasing the citizenship of Defendant LLCs will, so the Defendants claim, only add fuel to this fire.

These are not frivolous concerns, but neither are they as specific and concrete as is necessary to overcome the presumption of access. The Defendants are no doubt correct that the presence of the Kushner (and therefore Trump) families in this case has raised its profile and attracted significant, though perhaps not "unprecedented," media attention. (*See* Article and Internet Search, Defs.' Mot. Ex. 1, ECF No. 21-2.) But increased public interest in a case does not, by itself, overcome the presumption of access. In fact, it would logically strengthen it, particularly when the interest is due to the presence of important public figures in the litigation. In such an instance, the public's desire to evaluate the Court's decisionmaking is likely augmented. And beyond this apparently inevitable media scrutiny, Defendants have largely relied on "vague superlatives" and insinuations instead of demonstrating specific harms. The news article and headlines attached to Defendants' motion may demonstrate the media interest in this case, and may even demonstrate bias on behalf of certain media outlets on the grounds that Jared Kushner is a member of Defendant LLCs (though the Court does not so find), but they do not clearly demonstrate how more information about the other members of the other Defendant LLCs will impact the public's interest or bias.

The other members themselves may wish to keep their identities private, but such desires are not sufficient to overcome the presumption of access. Two other district courts dealt with similar concerns by LLC members and determined that such concerns were not sufficient countervailing interests. *See 3376 Lake Shore, LLC v. Lamb's Yacht Ctr., Inc.*, No. 3:14-CV-632-J-34PDB, 2014 WL 12621574 (M.D. Fla. Aug. 25, 2014); *Signicast, LLC v. Fireman's Fund Ins. Co.*, 920 F. Supp. 2d 967 (E.D. Wis. 2013). In *3376 Lake Shore*, the plaintiff LLC

wished to file what was essentially a removal statement under seal, arguing that its members wished to remain private and their identities were "not central to the merits of the case." 2014 WL 12621574, at *2 (internal quotation marks omitted). The court found that the plaintiff had not "articulated a legitimate privacy interest in the members' identities and its preference that the identities remain private [was] not a valid reason to overcome the presumption of public access." *Id.* Similarly, in *Signicast*, a plaintiff LLC moved to seal "certain documents in the record having to do with [its] ownership structure," and "[t]he only reason given for keeping this information secret [was] that the various individuals and entities . . . prefer[red] to not have their identities disclosed." 920 F. Supp. 2d at 970. This was not a "valid reason for removing documents that influence or underpin a judicial decision from the public record in civil litigation." *Id.* (citing *Baxter Int'l Inc. v. Abbott Labs.*, 297 F.3d 544, 545-47 (7th Cir. 2002)).

To be sure, the parties seeking to seal their removal statements in *3376 Lake Shore* and *Signicast* were plaintiffs, who had sought to initiate litigation and not, as here, defendants who are subject to it. But that distinction is not particularly important. Both the plaintiffs in *3376 Lake Shore* and *Signicast* and the Defendants here chose to avail themselves of federal jurisdiction on the basis of diversity of citizenship – either by filing a suit in federal court or through removal – and knew (or should have known) that doing so would require an exposition of their members for the purpose of determining citizenship. Furthermore, the members of an LLC are not unsuspecting bystanders caught in the litigational crossfire when the LLC is hauled into court. Rather, under the law, these "remote disinterested investors/families" comprise the parties in this case. *See Carden*, 494 U.S. at 195-96 ("[D]iversity jurisdiction in a suit by or against the entity depends on the citizenship of all the members." (internal quotation marks omitted)). But even were the Court to view these members (and their members, and so forth) as

12

remote entities unfairly snagged in this litigation, that sympathetic treatment would not tip the scales in their favor on the issue of access.

Just as the Defendants must present the alleged harm they will suffer in this case in specific and concrete terms, so too must the Defendants present the "privacy interests" of these "remote" parties in specific and concrete terms. They have not done so. The Defendants point to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), for the importance of privacy interests when applying the "balancing test to the presumption of access," (Defs.' Reply to Pls.' Opp'n at 4), but *Seattle Times* is distinguishable and in fact demonstrates the relative ambiguity of Defendants' allegations. *Seattle Times* concerned a protective order regarding the publication of documents that were not "judicial records," not the sealing of documents that were such, and the party seeking to suppress publication asserted much more than conclusory allegations of bias or embarrassment. Rather, they described, through affidavits, "incidents . . . involving attacks, threats, and assaults," and had "averred that public release of the [documents] would adversely affect [the plaintiffs' organization's] membership and income and would subject its members to additional harassment and reprisals." *Id.* at 26-27. The Defendants do not direct the Court to any such particular harms that the Defendant LLC members will face, but rather rest on the fact that these members "would prefer to not have their identities disclosed," *Signicast*, 920 F. Supp. 2d at 970, and that their identities are "not central to the merits of the case," *3376 Lake Shore*, 2014 WL 12621547, at *2 (internal quotation marks omitted). (*See* Defs.' Mot. Mem. Supp. at 6.) Neither of these arguments is persuasive.

The cases that Defendants cite for the proposition that privacy interests alone outweigh the public interest are distinguishable. For some, like *Seattle Times*, the harm was more specific than the harm of disclosing private information itself. *See Seattle Times*, 467 U.S. at 26-27

13

(physical and monetary harm would result from disclosure of private information); *Padco Advisors, Inc. v. Omdahl*, 179 F. Supp. 2d 600, 614 (D. Md. 2002) (sealing documents that contain "valuable trade secrets"); *Jarvis v. FedEx Office and Print Servs., Inc.*, Civ. No. DKC 08-1694, 2011 WL 826796, at *10 (D. Md. Mar. 7, 2011) (sealing documents containing personal contact information of employees for privacy "and security purposes"). For other cases in which the court *did* seem to seal records on the grounds of "pure" privacy interests, those cases concerned information that was significantly more private than simply the identities and citizenship of parties. *See, e.g.*, *Rock v. McHugh*, 819 F. Supp. 2d 456, 476 (D. Md. 2011) (sensitive medical information including plaintiff's history of alcoholism); *Briggs v. Marriott Intern., Inc.*, 368 F. Supp. 2d 461, 463 n.1 (D. Md. 2005) (sensitive medical records); *Young v. United Parcel Serv., Inc.*, DKC 08-2586, 2011 WL 665321, at *22 (D. Md. Feb. 14, 2011) (sensitive medical records, *inter alia*), *rev'd on other grounds by Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338. As a judge in this District has stated, when it comes to weighing privacy interests, "[m]anagerial structures and general information regarding business operations . . . fail to make the grade." *Minter*, 258 F.R.D. at 118. Finally, many of the cases cited by Defendant involved instances where the parties had earlier agreed not to disclose certain information, or the motions to seal were unopposed. *See Pittston Co. v. U.S.*, 368 F.3d 385, 406 (4th Cir. 2004) (parties had earlier agreed that the documents would remain confidential); *Rock*, 819 F. Supp. 2d 456, 476 (motions to seal unopposed); *Briggs*, 368 F. Supp. 2d 461, 463 n.1 (motion to seal unopposed); *Young*, 2011 WL 665321, at *22 (motions to seal unopposed). Although parties' prior agreements regarding confidentiality are not unalterable, *see Waterkeeper Alliance*, 278 F.R.D. at 141, and even a continuing agreement would not be dispositive, *cf. Chaplick for Canal Vista Trust v. Jeng Fen Mao*, 215 F. Supp. 3d 470, 477-78 (D. Md. 2016) (denying unopposed

motion to seal), a prior agreement between the parties would understandably weigh in favor of sealing a document. In that case, not present here, the Court might find it unfair for one party to induce another to disclose information under the expectation that the information would remain confidential, only to have it be disclosed later because it was used by that party in a dispositive motion or in trial (although the Court's finding such unfairness in that instance is not a certainty).

Finally, it is important to reiterate the underpinnings of the presumption that the Defendants must overcome. It is the presumption that *the public* can access these records for the purpose of assessing the products of the courts. *See Chaplick for Canal Vista Trust*, 215 F. Supp. 3d at 477-78 (denying a motion to seal even though it was unopposed because the public has a right to access regardless of the intentions of the parties). The Court is under no illusions about the interests of the Media Intervenors, and it does not believe that they oppose the Defendants' Motion solely because of their desire to ensure the Court makes a sound determination of subject matter jurisdiction in this case. But the Defendants are not tasked with outweighing the likely interests of the Media Intervenors. Rather, they must present interests that outweigh those of *the public*, and that outweigh the presumption, and tradition, that the Court conducts its business in the sunlight. *See Hicklin Eng'g, L.C. v. Bartell*, 439 F.3d 346, 348 (7th Cir. 2006) ("Judges deliberate in private but issue public decisions after public arguments based on public records."), *abrogation on other grounds recognized by RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689 (7th Cir. 2016). This right of access is reflexive as well, benefitting both the public and the courts, because the courts derive legitimacy in part from transparency. *See Public Citizen*, 749 F.3d at 266 (quoting *Littlejohn*, 851 F.2d at 682); *Hicklin Eng'g*, 439 F.3d at 348 ("The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view

makes the ensuing decision look more like a fiat and requires rigorous justification."). In light of these strong interests in favor of access, well argued but not held solely by the Plaintiffs and Media Intervenors, the Court will deny the Defendants' motion to seal.

### III. *Conclusion*

Under the common law, there is a presumption that the public has access to all judicial records, and in this instance the Defendants have failed to overcome that presumption. Accordingly, the Court DENIES Defendants' Motion (ECF No. 21) and GRANTS the Media Intervenors' motion (ECF No. 31). Defendants are directed to file their unsealed supplemental removal statement within two weeks of the issuance of this opinion; that is, no later than February 9, 2018.

DATED this 26th day of January, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge